LOUISVILLE TRUST CO. v. STOCKTON.

(Circuit Court of Appeals, Fifth Circuit. May 26, 1896.)

No. 445.

CONVERSION—TITLE—STOCK HELD IN TRUST.

Where stock is transferred to a trustee under a contract by which he agrees to hold and vote it for the benefit of two other persons and himself, jointly, the manner of voting, in case of disagreement, to be settled by arbitration, and to dispose of it when and as agreed upon by himself and one of the other parties, such other parties have no such title or right of possession of the stock as would give either of them a right to bring an action against the trustee for conversion upon his refusal to transfer to such party a third of the stock, nor can any incidental expressions in the contract, consistent with or indicating a different title, extend the title beyond what is clearly stated.

In Error to the Circuit Court of the United States for the Southern District of Florida.

H. Bisbee and C. D. Rinehart, for plaintiff in error.
A. W. Cockrell, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

PARDEE, Circuit Judge. This was an action at law, begun by Horace Scott, for the conversion of 130 shares of the capital stock of the Jacksonville Ferry Company. Other stock in another cor-

poration was also claimed to have been converted, but no evidence whatever was offered to support the claim for this other stock.

The bill of exceptions shows the following evidence introduced on the trial:

(1) The minutes of a stockholders' meeting held March 10, 1893, at which meeting J. A. Russell, H. H. Buckman, and Horace Scott were present, and in which Horace Scott, as president, called the meeting to order; and in which it is recited that "J. A. Russell and Horace Scott had, by a certain agreement with Archer Harmon, transferred three hundred and ninety shares of the ferry stock owned by them; and that said Harmon having stated that he would transfer a portion of said stock to Thomas P. Denham and J. N. C. Stockton, the said Harmon, Denham, and Stockton were admitted as stockholders," and thereupon Harmon, Stockton, Denham, and Buckman were elected directors, etc.

(2) A contract, executed same day, March 10, 1893, by Harmon and Stockton, containing the following:

"That out of the capital stock of said company received by the said Archer Harmon from the said Scott, Russell, and .Yeomans, and such other stock as may receive in any other way, an amount equal to 51 per cent. of the total capital stock of said company shall be transferred and assigned to J. N. C. Stockton, as trustee, to be held by him in the following manner, to wit: A one-third interest to be issued to said Stockton, as trustee, to be voted by him for the joint interests of the joint owners thereof, and said Stockton hereby, as mutually agreed and directed by the owners of said stock, to wit, the said Harmon, Scott, and Stockton, and in the event that the said Harmon, Scott, and Stockton shall fail to agree as to how said stock shall be voted, then the parties hereto agree to submit the cause of disagreement to arbitration, the said Harmon choosing one arbitrator, the said Stockton one, and the two arbitrators so chosen together selecting the third; and the parties hereto agree to abide by the decision of said arbitrators, and the said Stockton agrees to vote said stock in accordance with such decision. The said stock to be held intact until such time as the said Stockton and Harmon shall mutually agree to dispose of the same."

(3) Archer Harmon's certificate for 390 shares, and indorsement thereon, dated same day, March 10, 1893, as follows:

"For value received, I hereby assigned and transferred unto J. N. C. Stockton, Archer Harmon, and Horace Scott, in equal proportions, 390 shares of the capital stock named in the within certificate, and do hereby constitute and appoint J. N. C. Stockton and Archer Harmon true and lawful attorney, irrevocable, for and in my name and stead, but to transfer and set over all or any part of said stock, and for that purpose to make and execute all necessary acts of assignment, and transfer and one or more persons to substitute with like full power, as provided in contract dated March 10th, 1893, between Archer Harmon and J. N. C. Stockton.

"Dated March 10, 1893.　　　　　　　　　　　Archer Harmon."

(4) Letter of Bisbee & Rinehart to John N. C. Stockton, dated March 3, 1894, demanding the issue by him, as secretary, to Scott, of 130 shares of stock,—that is, of stock of the face value of 130 shares of stock therein,—saying, "We are advised that said company issued to you, as trustee, a certificate of stock which includes that amount of stock belonging to Horace Scott."

(5) Stockton's reply, stating that the stock so issued to him "in trust for Harmon, Scott, and myself is, by the terms of the trust under which it was issued to me, required to be held by me in my

name, to be voted as might be agreed upon between myself and Archer Harmon, and in event said parties could not agree as to how the stock was to be voted the arbitrators were to be appointed to determine how it should be voted. I cannot comply with your request without violating the trust under which the stock was to be issued to me."

(6) A statement of a witness, Buckman, that Horace Scott and one Yeomans and Russell bought all the stock of the Jacksonville Ferry Company in March, 1892. The defendant, to rebut this, introduced in evidence an indenture executed March 9, 1893, between Scott, Yeomans, and Russell of the first part and Harmon of the second part, containing this provision:

"Third. And the said parties of the first part, for the consideration aforesaid, hereby further bargain, sell, and transfer unto the said party of the second part three hundred and ninety shares, of the par value of thirty-nine thousand dollars, of the capital stock of the Jacksonville Ferry Company, and the said parties of the first part hereby agree to deliver the said last-mentioned stock to the party of the second part, and make any and all necessary transfer thereof which may be necessary to transfer and assign the same to the said party of the second part, his legal representatives or assignees. Said parties of the first part are to retain three hundred and sixty shares, of the par value of thirty-six thousand dollars, of capital stock of the Jacksonville Ferry Company, as their own property."

There was other documentary evidence offered, but it is not necessary to recite it, because it throws no additional light upon the title of Scott to the 130 shares of stock sued for, nor upon the right of possession under which Stockton held the same. Upon the evidence submitted the trial court directed a verdict for the defendant. A motion for a new trial was made, whereupon the judge, among other reasons for refusing the same, said:

"There does not appear to be any difficulty in determining from this record the title of the plaintiff's testator to this stock. It was purchased by Russell, Scott, and Yeomans, sold and transferred by them by the agreement of March 9th to Harmon, and on the 10th transferred to Stockton, the defendant herein, in trust for Harmon, Scott, and Stockton, to hold it intact, vote it as directed, divide the profits between these three, but only to dispose of it when he and Harmon could mutually agree so to do. All the title that Scott had in it was to have a voice in determining how it should be voted, and an equitable right to one-third of the profits. This was no such title or right of possession as would give him the right to bring an action for trover and conversion. The fact that he remained upon the board of officers subsequently to these agreements cannot be considered as showing any other title than is expressly shown, as the resignation of the offices held by Scott, Russell, and Yeomans was provided for only to take place as soon as requested by Harmon, but in the meantime they were to assist in calling and holding any and all meetings of directors or stockholders of the companies. Nor can the implication of ownership which may possibly be understood to arise from the language of the third paragraph of said agreement where it speaks of 'the owners of said stock, to wit, the said Harmon, Scott, and Stockton,' extend the title beyond what has been clearly stated. It is impossible in my view of the case to find any evidence of title in Scott, the testator of the plaintiff, sufficient to submit to a jury. I find no error in my previous instructions, and the motion for a new trial is refused."

We concur in this view of the case. Judgment affirmed.